# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DONALD W. YOUNG, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-12-294-RAW-SPS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Donald W. Young requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On February 14, 2013, Carolyn Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v.*

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on January 4, 1954, and he was fifty-seven years old at the time of the final administrative hearing (Tr. 28). He has a high school education and past relevant work as a truck driver (Tr. 27, 1012). The claimant alleges that he has been unable to work since November 10, 2003 because of rheumatoid arthritis (Tr. 235).

**Procedural History**

On January 6, 2004, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 18). The Commissioner denied his applications. ALJ Ralph Wampler found the claimant not disabled in a decision dated October 26, 2006 (Tr. 35-39). That decision was remanded by the Appeals Council on June 1, 2007 (Tr. 41-42). Thereafter, ALJ Tela L. Gatewood again found the claimant not disabled in a written opinion dated September 30, 2009 (Tr. 46-57). The Appeals Council also remanded that decision on June 4, 2010 (Tr. 76-78). Following that remand, ALJ Kim Parrish found that the claimant was not

disabled from his onset date of November 10, 2003 through January 2, 2009, but that the claimant *was* disabled starting January 3, 2009 in a written opinion dated May 26, 2011. (Tr. 17-29). The Appeals Council denied review of that decision, so the ALJ's opinion dated May 26, 2011 is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.1481; 416.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation, finding that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b); 416.967(b), except that the claimant was limited to only occasional stooping, kneeling, crouching, and crawling (Tr. 25). The ALJ further found that the claimant should avoid exposure to fumes (Tr. 25). While the ALJ found that the claimant was not capable of returning to his past relevant work, the ALJ concluded that there was relevant work in the economy he could perform, *i. e.*, parking lot cashier, assembler, and laundry folder. (Tr. 28). Thus, the ALJ found that the claimant was not disabled from November 10, 2003 through January 2, 2009 (Tr. 29).

## Review

The claimant contends that the ALJ erred in the following ways: i) by failing to properly analyze the treating physician opinions of Dr. Thomas B. Leahey, D.O. and Dr. Frederick Delafield, M.D.; ii) by failing to perform a proper credibility analysis; and iii)

by relying upon flawed vocational expert testimony. The undersigned Magistrate Judge finds the claimant's first contention persuasive.

The record reveals that the claimant began receiving treatment from Dr. Frederick Delafield, M.D., a rheumatologist, in January 2003 when he was referred by his primary care doctor (Tr. 346). At that time, he presented with complaints of diffuse arthralgias and myalgias without fatigue (Tr. 346). At that time, Dr. Delafield chose to approach his symptoms and treat them as fibromyalgia even though "it [didn't] fit perfectly" (Tr. 345). Dr. Delafield's attempts at treating the claimant's symptoms with medications were not successful, and on September 5, 2003, Dr. Delafield changed his diagnosis to seronegative rheumatoid arthritis and the claimant was prescribed methotrexate (Tr. 339).

On January 22, 2004, Dr. Delafield submitted a letter in which he wrote that the claimant had been suffering from inflammatory arthritis and chronic fatigue causing pain and stiffness since January 2003 (Tr. 337). He wrote that the claimant's condition "represent[ed] a threat to his health within the context of his occupation as a truck driver" (Tr. 337). Dr. Delafield wrote a second letter dated July 6, 2004, in which he stated that the claimant had "generalized arthralgias and myalgias without chronic fatigue" and muscle tenderness (Tr. 390). Dr. Delafield wrote that although no objective evidence showed muscle or joint inflammation, he still thought it was possible that the claimant had an inflammatory basis to his symptoms (Tr. 390). Dr. Delafield also wrote that the claimant had been diagnosed with rheumatoid arthritis and fibromyalgia even though the

claimant did not meet formal criteria for the diagnoses (Tr. 390). Finally, Dr. Delafield wrote that the claimant's symptoms disabled him from all gainful employment (Tr. 390).

Dr. Delafield also completed a form entitled "Arthritis Impairment Questionnaire" on July 6, 2004 in which he again identified the claimant's diagnoses as seronegative arthritis and fibromyalgia (Tr. 391). Dr. Delafield wrote that the claimant's prognosis was fair, and that he had normal range of motion and joint tenderness in his wrists (Tr. 391). Dr. Delafield opined that the claimant had moderate limitations in the following functional categories: i) grasping, turning, twisting objects; ii) using his fingers/hands for fine manipulations; and iii) using his arms for reaching, including overhead reaching (Tr. 393). Dr. Delafield further opined that the claimant was capable of sitting for six hours in an eight hour workday, standing/walking for two hours in an eight hour workday, and occasionally lifting and carrying up to ten pounds (Tr. 394-95). Dr. Delafield wrote that the claimant's pain was constantly severe enough to interfere with attention and concentration, that he would need to take two unscheduled twenty minute breaks per day, and that he would need to be absent from work more than three times a month due to his impairments (Tr. 396-97). Finally, Dr. Delafield opined that the claimant would need to avoid temperature extremes, humidity, and heights and would be incapable of pushing, pulling, kneeling, bending, and stooping (Tr. 397).

The record reveals that the claimant began receiving treatment for rheumatoid arthritis from Dr. Thomas B. Leahey, D.O., on June 10, 2004 (Tr. 417). The claimant presented with "moderate pain in multiple joints, especially the hands" and complaints of

fatigue and significant morning stiffness (Tr. 417). The claimant maintained regular appointments with Dr. Leahey. On June 1, 2006, Dr. Leahey submitted a form entitled "Rheumatoid Arthritis Impairment Questionnaire" (Tr. 476). Dr. Leahey wrote that the claimant's prognosis was fair and that he had pain, inflammation, and/or limitation of movement in his neck, mid-back, lower back, pelvis, shoulders, knees, ankles, hips, feet, elbows, wrists, and fingers (Tr. 476). Dr. Leahey identified the following as positive clinical findings: i) abnormal posture; ii) reduced range of motion in the shoulders; iii) reduced grip strength in his hands; iv) tenderness in his fingers, knees, shoulders, elbows, lower back, and neck; v) swelling in his fingers; vi) muscle spasms in his legs; and vii) muscle weakness in his hands and shoulders (Tr. 477). Dr. Leahey opined that the claimant was capable of sitting for one hour in an eight hour workday and standing/walking for less than one hour in an eight hour workday (Tr. 479). Dr. Leahey further opined that the claimant was capable of occasionally lifting up to twenty pounds but never lifting over that, occasionally carrying up to ten pounds and never over that, and that the claimant's pain was severe enough to periodically interfere with his attention and concentration (Tr. 480). Dr. Leahey wrote that the claimant was unable to tolerate stress of any kind, and that he would need to take breaks every thirty minutes to relieve pain (Tr. 481). Finally, Dr. Leahey found that the claimant would need to avoid temperature extremes, humidity, dust, and heights and that he would be prohibited from pushing, pulling, kneeling, bending, and stooping (Tr. 481). On January 3, 2008, Dr.

Leahey submitted a letter intending to update his June 2006 Impairment Questionnaire in which he reiterated his findings (Tr. 598).

The claimant was also examined by state physician Dr. Terry Kilgore, M.D. on April 22, 2004 (Tr. 352-58). Dr. Kilgore found that the claimant had minimal swelling in his hands and pain in the movement of his hands, wrists, elbows, shoulders, ankles, and knees (Tr. 353). The claimant was found to have a reduced range of motion in his back, neck, hips, knees, ankles, shoulders, and wrists (Tr. 355-56). Upon examination of his lumbosacral spine, the claimant had a reduced range of motion and pain, and the claimant exhibited weak heel and toe walking (Tr. 358).

Finally, state reviewing physician Dr. Charles Murphy, M.D. testified at the final administrative hearing on April 21, 2011 (Tr. 995). Dr. Murphy testified that though the claimant had been diagnosed with rheumatoid arthritis, he stated that he felt that it was "maybe mild inflammatory arthritis" (Tr. 995). Based on his review of the medical record, Dr. Murphy opined that the claimant was capable of performing the full range of light work as defined in 20 C.F.R. §§ 404.1567(b); 416.927(b) (Tr. 997).

Medical opinions from a treating physician are entitled to controlling weight if they were "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If a treating physician's opinions were not entitled to controlling weight, the ALJ must determine the proper weight to give them by

analyzing the factors set forth in 20 C.F.R. § 416.927.  *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in § [416.927].'"), *quoting Watkins*, 350 F.3d at 1300.  Those factors are:  (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001) [quotation omitted].  Finally, if the ALJ decides to reject a treating physician's opinions entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id*. at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight."  *Id*. at 1300 [quotation omitted].

In this case, the ALJ rejected the opinions of two treating physicians, Dr. Delafield and Dr. Leahey, because he found that they "were based on the claimant's reported limitations of functioning rather than on objective medical evidence of record" (Tr. 26).  This is not a legitimate basis upon which to reject these opinions.  First, "[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences

from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*" *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) [quotation omitted] [emphasis in original]. The ALJ cited nothing in the record which suggested that either physician relied primarily on the claimant's subjective complaints to support their opinions. *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) ("The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was 'an act of courtesy to a patient.' The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy. 'In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*'"), quoting *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) [quotations omitted] [emphasis in original]. Second, Dr. Leahey set out a number of positive clinical findings which supported his opinion, including, *inter alia*, abnormal posture, reduced range of motion in the shoulders; reduced grip strength in his hands, and muscle weakness in his hands and shoulders, so the ALJ's purported basis for rejecting the opinions is not supported by the record itself (Tr. 477).

Additionally, even when an ALJ finds that a treating physician opinion is not entitled to controlling weight, the ALJ still has a duty to analyze the opinion in accordance with the factors set out in 20 C.F.R. §§ 404.1527; 416.927. *See*, *Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004) ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300, *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5. In this case, the ALJ clearly failed to fulfill that duty, as there was no discussion related to *any* of the relevant factors set out in 20 C.F.R. §§ 404.1527; 416.927.

Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis of the treating physician opinions of Dr. Delafield and Dr. Leahey. On remand, the ALJ should reconsider these opinions in accordance with the appropriate standards and determine what impact, if any, such reconsideration has on the claimant's ability to work.

**Conclusion**

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to

this Report and Recommendation must be filed within fourteen days.  *See* Fed. R. Civ. P. 72(b).

**DATED** this 5th day of September, 2013.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma